499 A.2d 598

**COMMONWEALTH of Pennsylvania**

v.

**Richard W. STOCKARD, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 24, 1983.

Filed Sept. 27, 1985.

John Hooper, III, Pittsburgh, for appellant.

David A. Hepting, Assistant District Attorney, Butler, for Com., appellee.

Before SPAETH, BROSKY and MONTEMURO, JJ.

BROSKY, Judge:

This appeal is from the dismissal of a Post Conviction Hearing Act (PCHA) petition. Appellant was convicted of theft by failure to make required disposition of funds received and for violating § 1–401(b) of the Pennsylvania Securities Act. Appellant raises all of his issues in terms of the ineffectiveness of prior counsel. Three issues relate to the charge to the jury, three relate to the sentencing, one relates to his reliance upon counsel's advice and one relates to a conflict of interest on the part of an Assistant District Attorney.

Appellant sold stock in a restaurant venture and then used almost all of the proceeds to pay off unrelated personal debts. Following his conviction, a direct appeal was brought and judgment of sentence affirmed by the Supreme

Court. *Commonwealth v. Stockard*, 489 Pa. 209, 413 A.2d 1088 (1980). A PCHA petition was then filed and a hearing held. This appeal is from the dismissal of that petition.

## I.

■ Among appellant's arguments are that the trial court erred in its charge to the jury by not explaining the meaning of the term "material" as used in the Securities Act. This issue was not raised in the PCHA petition in this form and it is possible, therefore, that it is waived for purposes of our appellate review at this time. *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1980). A broader, less specific issue was raised in the PCHA petition; and, consequently, may encompass this issue. We need not, however, decide this waiver issue, as appellant is herein being granted a new trial on other grounds.[1]

Appellant also argues that it was error not to include in the charge to the jury that the interests of the prosecution witnesses may be taken into consideration by the jury in evaluating the credibility of their testimony.[2] This was also not in the PCHA petition and is also waived.[3]

■ A third issue is similarly waived through its absence in the PCHA petition. Appellant challenges the sentencing as it was allegedly undertaken without the use of a pre-sentence report. Sentencing errors such as the one alleged to have occurred here do not go to the illegality of the sen-

1. Contrary to the assertion made in the concurrence, we are not holding here that this issue was waived. Rather, as stated above, we are merely noting that we need not decide the waiver issue. We add, for purposes of re-trial, however, that if we were to treat this issue on its merits we would find it to be meritorious.

   Appellant also contends that the charge on the Theft by Failure to Make Required Disposition of Funds Received was deficient. We find his argument on this issue to be without merit.

2. Included in the charge was a similar reference to considering appellant's interest in the outcome of the case in appraising his credibility as a witness.

3. The PCHA petition only included an item objecting to the reference about appellant's interest and credibility. That is not raised on appeal.

tence imposed and can therefore be waived. *Commonwealth v. Ellison*, 293 Pa.Super. 329, 439 A.2d 136 (1981).

## II.

Appellant argues that the trial court erred in not specifying the state of mind necessary to convict under the Securities Act. The PCHA court held that this issue was waived. We find that this issue was, to the contrary, presented in the PCHA petition in a form in which it should have been treated on its merits.

█ The PCHA court did not explain why it held that this and several other issues were waived. We note that no objections were made to the charge at trial nor did the post-verdict motions raise any charge-related issues. Consequently, on direct appeal this Court declined to address charge-related issues.[4] *Commonwealth v. Stockard*, Superior Court Memorandum Opinion, No. 689 Pittsburgh, 1977, filed 3/16/79. This would normally constitute a waiver of all charge-related issues. However, in his PCHA petition appellant did plead the extraordinary circumstance of ineffective assistance of counsel. Moreover, his pleading of that ineffectiveness was faultless. He argued that appellate counsel was ineffective in not raising the ineffectiveness of trial counsel in not raising this issue. See *Commonwealth v. Brown*, 313 Pa.Super. 256 at 259, 459 A.2d 837 at 839 (1983) (Concurring Opinion by Brosky, J.). This issue was, therefore, properly before the PCHA court and is properly before us.[5]

It remains for us to determine whether or not appellate counsel was ineffective in not raising the ineffectiveness of trial counsel in not objecting to the absence of a charge regarding the willful violation of the Securities statute.

The crime for which appellant was convicted reads:
*Sales and purchases* It is unlawful for any person, in connection with the offer, sale or purchase of any securi-

**4.** No charge-related issues were brought before the Supreme Court on direct appeal.

**5.** The consequences of the PCHA court not having considered this issue will be examined *infra*.

ty in this State, directly or indirectly: ... (b) ... to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading ...[6]

70 P.S. § 1–401.

As appellee notes, this statute does not include any mention of willful behavior. However, the section of the Securities Act which provides for criminal penalties does.

**Criminal penalties**

Any person who wilfully violates any material provision of this act, except section 407(a) for any rule under this act, or any order of which he has notice, or who violates section 407(a) knowing that the statement made was false or misleading in any material respect, may be fined not more than five thousand dollars ($5,000) or imprisoned not more than five years, or both.

70 P.S. § 1–511.

The mental state of willfulness is statutorily defined.

Requirement of willfulness satisfied by acting knowingly. —A requirement that an offense be committed willfully is satisfied if a person acts knowingly with respect to the material elements of the offense, unless a purpose to impose further requirements appears.

18 Pa.C.S.A. § 302(g).

"Knowingly" is in turn defined.

(2) A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist

18 Pa.C.S.A. § 302(b)(2)(i).

■ Thus, a proper charge would have included the requirement that appellant was *aware* that he was omitting

---

6. Here it was the prosecution theory that appellant omitted to state the material fact that the proceeds of the sale of the securities were to be used to pay his non-corporate debts.

"to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading." That awareness must not merely go to the fact that he was omitting to make a statement but must also go to the nature of the statement he was omitting. The former without the latter is meaningless.

This is a significant requirement. Without it, one could be convicted of having violated the statute with a lesser degree of culpability—recklessness. 18 Pa.C.S.A. § 302(c). Under an identically worded statute, the Washington Supreme Court noted:

> The instructions do not leave the impression that mere suspicious circumstances, use of high pressure tactics or the fact that the defendants might have known the facts indicating the falsity of the representation would be sufficient circumstantial evidence to warrant a conviction.

*State v. Hynds,* 84 Wash.2d 657, 529 P.2d 829 at 834 (1974).

A Kentucky case, also reviewing an identically worded statute, held that it was error to have omitted the willful element from the charge. *Queen v. Commonwealth,* 434 S.W.2d 318 at 323 Ky., (1968). See also *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

While none of these three non-Pennsylvania cases govern our interpretation of the state statute before us, it is at least marginally desirable that the same statute be given the same interpretation in different states. More importantly, we find them persuasive. In any event, a plain reading of the relevant Pennsylvania statutes leads inescapably to this conclusion: a proper charge to the jury should have included the willful element.

Normally, the next point in our disposition of this issue would be whether trial counsel had "some reasonable basis designed to effectuate his client's interests" in not objecting to the faulty charge—and whether appellate counsel had "some reasonable basis" in not raising trial counsel's ineffectiveness in this regard. *Commonwealth ex rel. Wash-*

*ington v. Maroney,* 427 Pa. 599 at 604-5, 235 A.2d 349 at 352 (1967).

Since there was no PCHA hearing on the subject, it would also normally be the next step to remand for a hearing on this question. However, in this case, we will not do so.

█ We hold, as a matter of law, that there could be no "reasonable basis" for trial and appellate counsel's failure to act with regard to this issue. The inclusion of the higher degree of intent—willfulness—could not have had any but a salutory effect for the appellant. Therefore, we vacate judgment of sentence and remand for a new trial.

### III.

Another issue raised by appellant relates to the charge given to the jury. He argues that the trial court erred in not stating that each of the *elements* of each count of the Securities Act crime must be proven beyond a reasonable doubt.[7]

The disposition of this issue is governed by the Pennsylvania Supreme Court case of *Commonwealth v. Bishop,* 472 Pa. 485 at 490-1, 372 A.2d 794 at 796 (1977).

> Nowhere, however, in the entire charge did the court explain that the presence of each of the elements of the conduct charged must be proven by the Commonwealth beyond a reasonable doubt.... The defense had an absolute right to have the jury instructed not only as to the quantum of proof required to establish guilt, but also that the requirement extended to each of the material elements of the offense. The function of elucidating the relevant legal principles belongs to the Judge, and the failure to fulfill this function deprives the defendant of a fair trial. (Citation omitted) It is entirely possible that, as a result of the charge, as it was given, the jury concluded that the Commonwealth might meet its burden if the *cumulative* evidence of guilt was such that they

7. This issue is also properly phrased in terms of the ineffectiveness of appellate counsel in not raising the ineffectiveness of trial counsel in not objecting to this omission.

were convinced beyond a reasonable doubt although they were not convinced beyond a reasonable doubt as to one or more of the elements of the offense. This is not the correct standard and differs significantly from the requirement that each and each element of the crime meet this same measure of substantiation. (Emphasis in original.)

We conclude that the trial court erred in not having charged that every element of the Securities Act violation had to be proved beyond a reasonable doubt. The PCHA court erroneously considered this issue to have been waived and therefore no evidentiary hearing was held on this issue.

██ But, at this juncture, it is not, strictly speaking, the trial court's error which is before us; rather it is appellate counsel's ineffectiveness in not objecting to the faulty charge. We find, as a matter of law, that there could be no reasonable basis for counsel's failure to act and thus, notwithstanding the absence of a hearing on this matter, we hold that counsel was ineffective in this regard.

## IV.

██ The next issue is an alleged sentencing error. Appellant argues that his sentence was improperly imposed in that the sentencing court did not state its reasons for the sentence imposed on the record at the time of sentencing.[8] We agree.

The only comments made by the sentencing court other than the imposition of sentence are:

Very sorry, Mr. Stockard. You deceived these people. You deceived the Pennsylvania Securities Commission.

This in no way complies with the requirements laid down in *Commonwealth v. Riggins*, 474 Pa. 115 at 134-5, 377 A.2d 140 at 149-50 (1977).

The Legislature, in recognizing the need for sentencing guidelines, has enacted the Sentencing Code. Section

---

**8.** Again, this issue was properly pleaded in terms of ineffectiveness of prior counsel.

1321(a) of the Code provides for five possible dispositions —probations, guilt without further penalty, partial confinement, total confinement, and a fine. The Legislature has adopted the following basic policy to guide the trial court in imposing sentence: "[T]he sentence imposed should call for the minimum amount of confinement that is consistent with the protection of the public, the gravity of the offense, and the rehabilitative need of the defendant." The Legislature has also enumerated specific factors which the trial court should consider in determining which of the five possible dispositions is appropriate for a particular defendant. These factors provide the sentencing court with guidelines for the articulation of the reasons for its sentencing decision. Absent a statement of reason, the record will not reveal whether the legislatively mandated factors have been considered. (footnotes omitted)

*Riggins* had not been filed at the time of sentencing herein. However, in *Commonwealth v. Kostka,* 475 Pa. 85, 379 A.2d 884 (1977), the Supreme Court of this Commonwealth made the requirements of *Riggins* retroactive. There was, therefore, error in the sentencing.

As such, that issue has been waived. It is before us only in terms of the ineffectiveness of counsel. In this instance, there is no need for us to remand for an evidentiary hearing.[9] As a matter of law, neither trial nor appellate counsel could have had a rational basis for failing to raise this issue. *Commonwealth v. Terrell,* 276 Pa.Super. 136 at 141, 419 A.2d 133 at 135 (1980); *Commonwealth v. Gaito,* 277 Pa.Super. 404 at 412, 419 A.2d 1208 at 1213 (1980).

As we have already vacated judgment of sentence and remanded for a new trial, it is doubly unnecessary for us to remand for an evidentiary hearing. Once again, we reach this issue only for the guidance of the court below after retrial.

9. The PCHA court also erroneously found this issue to be waived.

## V.

Even if it were not moot, in light of the paucity of facts supporting appellant's sentence, we could not rule on appellant's claim that the sentence imposed was excessive. *Commonwealth v. Cruz*, 291 Pa.Super. 486 at 490, n.3, 436 A.2d 220 at 222, n.3 (1981).[10]

## VI.

Appellant next argues that appellate counsel was ineffective in not raising the ineffectiveness of trial counsel in not calling as a witness Mr. Hawk. In an affidavit submitted to the PCHA Court, appellant alleged that he had relied upon Mr. Hawk's advice as his counsel in committing the acts for which he was convicted.[11] He states further that trial counsel declined to call Mr. Hawk on the ground that Mr. Hawk was a member of the District Attorney's Office.[12]

 First, ineffective assistance of counsel can be established through the failure to call a witness about which counsel had been informed, absent investigation or adequate explanation. *Commonwealth v. Williams*, 274 Pa. Super. 464, 418 A.2d 499 (1980).

 Second, we find utterly without merit trial counsel's purported explanation that he could not call Mr. Hawk as a witness because he was a member of the District Attorney's staff. His employment by the District Attorney would not

10. While not making a decision on this issue, some comments are in order. Considering that this was appellant's first criminal conviction and considering the non-violent nature of the crimes involved, it would appear that the sentence imposed—five to ten years—was excessive. Other factors, unknown to us, may, nonetheless, justify this sentence. We reemphasize that this is not our holding, merely an observation based on what limited facts are before us. Any appellate decision on the issue of excessiveness must await retrial, conviction, resentencing and appeal therefrom.

11. An allied allegation of ineffectiveness was that trial counsel erred in not raising the issue of reliance upon advice of counsel. The PCHA Court's opinion correctly notes in this regard that trial counsel did argue such reliance to the jury. This particular claim is, therefore, without merit as a factual matter.

12. The PCHA Court did not treat this claim in its opinion.

have conferred upon Mr. Hawk any immunity from his duty as a citizen to testify in a criminal case.

Thus, if established factually and not justified in some way, this issue could establish ineffective assistance and mandate a new trial. While this argument is legally sound, we are unable once again to rule on the factual applicability of this argument to the case before us. This is the result of no evidentiary hearing having been held on this matter before the PCHA Court.

However, since a new trial has been granted on other grounds, it is unnecessary for us to remand for an evidentiary hearing on this issue.

## VII.

Appellant's last argument is that appellate counsel was ineffective in not objecting to Mr. Hawk having argued for the prosecution in the appeal of this case before the Supreme Court.[13]

Mr. Hawk was allegedly appellant's counsel in the business transactions which formed the basis for the convictions before us. According to appellant, he had followed Mr. Hawk's advice in committing the acts for which he was prosecuted.

The PCHA Court, without benefit of an evidentiary hearing on this issue, found against appellant stating: "The Court can see no prejudice to the defendant by Mr. Hawk's argument from the record before the Supreme Court."

The problem with this conclusion is that the PCHA Court arrived at it without the benefit of an evidentiary hearing. We fail to comprehend how that Court could assume the resolution of this issue without any evidence before it. We understand that appellate cases are to be argued only on the basis of the pre-existing record and that the record was closed prior to Mr. Hawk's appearance before the Supreme

13. It is not apparent from the record before us whether Mr. Hawk also wrote the prosecution's brief for the Supreme Court appeal.

Court. On the other hand, we are also acutely conscious of potential improprieties.

The possibility certainly exists of an impermissible use of information which Mr. Hawk was privy to as appellant's counsel. Indeed, this may have occurred without any awareness of it on Mr. Hawk's part. In order to prevent such a forbidden flow of information, Mr. Hawk would have had to consciously separate everything that he knew about the case into two categories: that obtained solely as a result of having been appellant's counsel and that obtained as a member of the prosecution on appeal. Then, he would have had to use only the latter category in his participation on appeal. The difficulty of the successful performance of these mental gymnastics indicates that the issue merited an evidentiary hearing.

While it is not necessary for us to address this issue on its merits, we are moved to comment on Mr. Hawk's *alleged* behavior in arguing for the prosecution after serving as appellant's counsel in the transactions for which he was convicted. *If* appellant's allegations as to Mr. Hawk's consecutive involvement are true, they portray a most unfortunate situation. If true, these actions would demonstrate a serious lack of good judgment and a reprehensible violation of professional ethics.

This would be our observation even if no misuse of privileged information occurred—if the consecutive representation occurred as appellant alleges. The Code of Professional Responsibility states that:

> Every lawyer owes a solemn duty to uphold the integrity and honor of his profession; ... and to strive to avoid not only professional impropriety but also the appearance of impropriety.

Code of Professional Responsibility, Canon 9, Ethical Consideration 9–6.

It would be hard to conceive of a situation more repugnant to our national sense of decency and fair play than a lawyer who had served as a legal advisor to a client in a

matter later arguing for the prosecution in a case arising out of that same matter.

\* \* \*

Judgment of sentence is vacated and the case is remanded for a new trial.

SPAETH, President Judge, files a concurring opinion.

MONTEMURO, J., files a concurring statement.

SPAETH, President Judge, concurring:

I agree that we should remand for a new trial and I write separately only to respond to the question, raised but not answered by the majority, whether the claim that counsel was ineffective in failing to object when the trial court did not define the term "material" in its charge has been waived.

The majority states, see its at p. 600 that it need not decide whether appellant has waived the right (1) to challenge trial counsel's effectiveness in failing to object that the charge to the jury did not include a definition of the term "material" as contained in the Pennsylvania Securities Act of 1972, 70 P.S. § 1–401(b), and (2) to challenge appellate counsel's failure to raise this issue on direct appeal. I find no waiver. Appellant's petition for relief under the Post-Conviction Hearing Act, 42 Pa.C.S.A. § 9541 et seq., alleges that trial and appellate counsel were ineffective in failing to object to the trial court's failure "to instruct the jury on the essential elements of the Securities Act violations, including but not limited to the requirement that the Defendant must have had a specific intent to defraud the shareholders, in order to convict." PCHA Petition at ¶ 8(i). See id. at ¶¶'s 8(o) & (r). Section 401(b) of the Securities Act provides:

It is unlawful for any person, in connection with the offer, sale or purchase of any security in this State, directly or indirectly:

. . . .

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary to make the statements made, in the light of the circumstances under which they are made, not misleading.

70 P.S. § 1–401(b).

Section 511 of the Act makes a willful violation of any material provision of the Act subject to criminal penalties.[1] Thus, an essential element of the offense appellant was charged with committing is the "making [of] an[] untrue statement of a material fact or [the] omi[ssion of] a material fact." 70 P.S. § 1–401(b). The trial court should therefore have instructed the jury that without proof beyond a reasonable doubt that appellant had misstated or omitted to state a "material fact," he could not be convicted of violating the Act. By alleging in his petition for post-conviction relief that trial and appellate counsel were ineffective in failing to object to the trial court's failure "to instruct the jury on the essential elements of the Securities Act violations," appellant preserved the argument he now makes. Since I can imagine no reasonable basis for counsels' failure to object, I should hold counsel ineffective, and remand for a new trial on that basis alone, *i.e.*, even if there were no other basis.

The Pennsylvania Securities Act does not define "material fact," and case law under the Act to date has not developed a definition, but it is clear that in the context of a transaction in securities, "material fact" has a specialized

1. Section 511 provides:

Any person who wilfully violates any material provision of this act, except section 407(a)[1] for any rule under this act, or any order of which he has notice, or who violates section 407(a) knowing that the statement made was false or misleading in any material respect, may be fined not more than five thousand dollars ($5,000) or imprisoned not more than five years, or both. Each of the acts specified shall constitute a separate offense and a prosecution or conviction for any one of such offenses shall not bar prosecution or conviction for any other offense. No indictment or information may be returned under this act more than five years after the alleged violation.
70 P.S. § 1–511.

meaning. The Second Circuit has defined "material fact" as follows:

> As we said in *List v. Fashion Park, Inc.*, 340 F.2d 457, 462 (2nd Cir.1965), "The basic test of materiality ... is whether a *reasonable* man would attach importance ... in determining his choice of action in the transaction in question. Restatement, Torts § 538(2)(a); accord Prosser, Torts 554–55; I Harper & James, Torts, 565–66." (Emphasis supplied.) This, of course, encompasses any fact "... which in reasonable and objective contemplation *might* affect the value of the corporation's stock or securities...." *List v. Fashion Park, Inc.*, supra at 462, quoting from *Kohler v. Kohler Co.*, 319 F.2d 634, 642, 7 A.L.R.3d 486 (7 Cir.1963). (Emphasis supplied.)
>
> *Securities and Exchange Commission v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 849 (2d Cir.1968), *cert. denied sub. nom. Coates v. Securities and Exchange Commission*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969).

*See also Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972) ("All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision.") I should therefore hold that at appellant's new trial the trial court should instruct the jury that "the Commonwealth must prove beyond a reasonable doubt that appellant failed to disclose a fact to which a reasonable man would attach importance in determining his choice of action in the transaction in question, and this includes any fact that in reasonable and objective contemplation might affect the value of the corporation's stock." *See Securities and Exchange Commission v. Texas Gulf Sulphur Co.*, supra.

MONTEMURO, Judge, concurring:

I agree with the majority that we should remand for a new trial. While the majority decided not to reach the issue of waiver regarding the claim of ineffectiveness of counsel in failing to object when the trial court did not define the term "material" as used in the Securities Act, had that issue

been reached, I would agree with the analysis of "materiality" put forth by President Judge Spaeth in his concurring opinion.